# EXHIBIT  1

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

------------------------------------------------------------

UNITED STATES OF AMERICA,

      Plaintiff,             Case No. 07-CV-019-B

      vs.                 Cheyenne, Wyoming
                             January 4, 2008
JANE JOYCE RICE,           10:45 a.m.

      Defendant.

------------------------------------------------------------

TRANSCRIPT OF MOTION PROCEEDINGS

BEFORE THE HONORABLE CLARENCE A. BRIMMER
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:     MR. MICHAEL G. PITMAN
                      Trial Attorney
                      U.S. DEPARTMENT OF JUSTICE
                      Tax Division
                      P.O. Box 683
                      Washington, D.C.  20044

For the Defendant:     MS. JANE RICE
                      Pro Se
                      9 Pleasant Valley Lane
                      Sheridan, Wyoming  82801

Court Reporter:        Ms. Janet Davis, RMR, FCRR
                      Federal Official Court Reporter
                      2120 Capitol Avenue, Room 2228
                      Cheyenne, Wyoming 82001
                      (307)635-3884

1        P R O C E E D I N G S

2        (Motion proceedings commenced

3        10:45 a.m., January 4, 2008.)

4              THE COURT:  Good morning, ladies and gentlemen.  This

5    is the case of the United States versus Jane Joyce Rice; Water

6    Garden, Incorporated; Perpetual Legacy Corporation; Carte

7    Blanche Trust and Newport Pacific Trust Company, Limited.  And

8    we have the motions of Miss Rice to set aside the clerk's entry

9    of default and for reconsideration of the motion to quash

10   service.

11             So I will be glad to hear you, Mrs. Rice.

12             MS. RICE:  May I come forward?

13             Thank you, Judge Brimmer.  I have some statements I

14   would like to make.  Could I give you a copy?

15             Would it be all right to give him a copy of what I'm

16   going to say here?

17             I have a copy of what I have got prepared here that I

18   could give to you if you would like.

19             Number one, for the record, my name is Jane Joyce

20   Rice.  My appearance at this hearing is special rather than

21   general for the purpose of making a verbal record of this

22   Court's lack of both in personam jurisdiction over me and

23   in rem jurisdiction over the property of concern in the

24   complaint.

25             Two, for the record, I declare my character as an

1   American citizen.  I was born at Sheridan within the sovereign

2   Wyoming state which is within neither a federal state or

3   enclave.  This declaration is made in writing by affidavit

4   provided to this Court together with my motion to quash.

5   Three, for the record, I distinguish my character and

6   status by declaring once again that I am not a U.S. citizen

7   subject under the Fourteenth Amendment or as identified by the

8   cases historically known as the Insular cases or as defined in

9   Title 26 of the Code of Federal Regulations in

10  Section 1.1-1(a)(2).  I am not a, quote, taxpayer, end quote,

11  as that term is defined by Title 26 of the United States Code.

12  Four, for the record, no administrative remedy is

13  provided nor form provided or made available to me relative to

14  the plaintiff's claims as all administrative procedures

15  otherwise provided are for, quote, taxpayers, end quote, as

16  that term is defined by Title 26 of the United States Code and

17  do not apply to nontaxpayers.

18  Five, for the record, this district court, a

19  territorial court under Article 1 of the United States

20  Constitution, as distinguished from a constitutional court

21  under Article III, is a legislative court, a congressional

22  creation of 28 U.S.C. Section 132 under the direct control of

23  Congress and is unable to provide me a remedy in this instance.

24  Six, this district court, a court of limited, as

25  distinguished from general, jurisdiction is unable to access

1  the impartiality needed to determine my status and character.

2  In this regard, I notice this Court of Judge Leavy's decision

3  and comments in Cochran versus Paul and Tacoma Lumber Company,

4  73 Federal Supplement 288.

5       Seven, to demonstrate that U.S. District Courts are

6  incapable of providing an impartial tribunal, I quote from

7  Judge Wyzanski's decision in Lord versus Kelly et al., 240

8  Federal Supplement 167, 1965, where he said, and I quote, "More

9  than once the judges of a court have been indirectly reminded

10  that they personally are taxpayers.  No sophisticated person is

11  unaware that even in this very commonwealth the Internal

12  Revenue Service has been in possession of facts with respect to

13  public officials which it has presented or shelved in order to

14  serve what can only be called political ends, be they high or

15  low.  And a judge who knows the score is aware that every time

16  his decisions offend the Internal Revenue Service, he is

17  inviting a close inspection of his own returns," end quote by

18  Judge Wyzanski.

19       Eight, for the record, the language of the Declaratory

20  Judgment Act -- declaratory -- I said that wrong -- Judgment

21  Act, Title 28, Section 2201, expressly precludes a federal

22  court from granting declaratory relief in federal tax cases.

23  Because a United States District Court is prohibited by this

24  act from providing a remedy where the underlying issues involve

25  Title 26 or its implementing regulations, this Court cannot

1    decide the legal relations or rights of the parties in this

2    dispute.

3           See, for example, Willis versus Alexander, 575 Federal

4    2d 495, Fifth Circuit, 1978; and West Chester Feed and Supply

5    Company versus Erwin, 438 Federal 2d 929, Sixth Circuit, 1971;

6    and Red Star Yeast and Products Company versus LaBudde, 83

7    Federal 2d 394, Seventh Circuit, 1936.

8           Nine, for the record, this district court has no

9    capacity to recognize my character or status or to provide me

10   with adequate remedy.  While the Anti-Injunction Act,

11   26 U.S.C. Section 7421, does not specifically prohibit me, a

12   nontaxpayer, from seeking an injunction against the United

13   States, the Declaratory Judgment Act bars federal district

14   courts from determining my lawful character, relations and

15   rights juxtaposed to those of the plaintiff in matters of

16   federal taxation.

17          Ten, my conclusion relative to remedy in this

18   instance, Congress, by way of the Anti-Injunction Act, coupled

19   with the Declaratory Judgment Act, has effectively barred any

20   relief under Title 28 U.S.C. which only governs remedies or

21   lack thereof for U.S. citizen subjects while providing no

22   remedy for me, a native born American non-U.S. citizen subject.

23          Eleven, a metaphor best describing the circumstance I

24   am describing is this is a tribal court and I am not a member

25   of the tribe.

1       Twelve, for the record, in support of my motion to

2  reconsider or for findings of fact and conclusions of law or to

3  certify for appeal the denial of my amended motion to quash, I

4  say:  One, this Court lacks in rem jurisdiction to foreclose on

5  real or personal property in Wyoming not situate in a federal

6  enclave or territory of the United States.

7       THE COURT:  Now, you must define for me what you

8  regard as a federal enclave.

9       MS. RICE:  Federally owned land within a state that

10 has been signed over.

11      THE COURT:  The only enclave of federal jurisdiction

12 that I am aware of that's anywhere close to us here is the

13 Warren Air Base, but, of course, another one that readily comes

14 to mind is the Wind River Indian Reservation.  Those are both

15 federal enclaves.

16      Now, is it your contention that the only way you could

17 have been served with process from this court was on a federal

18 enclave such as the Indian reservation or the air base?

19      MS. RICE:  No.

20      THE COURT:  Well, you go ahead and tell me what your

21 argument is, then.

22      MS. RICE:  What they are attaching is not under the

23 U.S. federal government ownership.

24      THE COURT:  So you're saying that the United States

25 could only enforce its tax laws against property in a federal

2e09155e-a1dc-495f-b24d-cc5c24729e2e

Page 7

1    enclave?

2         MS. RICE:  What I would like you to do, sir, is to

3    look into the information that we have and you will find it.

4         THE COURT:  Well, I'm still not sure I understand what

5    your argument is, but I will let you go ahead and explain it.

6         MS. RICE:  Thank you.

7         I will repeat the number one:  This Court lacks in rem

8    jurisdiction to foreclose on real or personal property in

9    Wyoming not situate in a federal enclave or territory of the

10   United States.  That refers to the U.S.C.

11        Two, this Court lacks subject matter jurisdiction

12   under 26 U.S.C. 7402(e) as this is not an action to quiet title

13   and no facts were pled in the complaint as such.  That's

14   referring to some of the other papers.

15        Three, this Court lacks jurisdiction over the subject

16   matter under 28 U.S.C. Sections 1340, 1345 and 26 U.S.C.

17   7402(a) on ground that the chief counsel of the IRS lacks the

18   capacity and standing to foreclose on property not in

19   territories or enclaves of the United States as the scope and

20   purview of his power is statutorily -- statute -- statutorily

21   limited to cases, actions, territory and property within the

22   exclusive legislative jurisdiction of the United States, i.e.,

23   within the District of Columbia, possessions and territories of

24   the United States.  See paragraphs 3(b), 3(c), 5(i) and 9 of my

25   amended motion.

Page 8

1        THE COURT:  Now, why do you say that?

2        MS. RICE:  The law says that, sir.

3        THE COURT:  The definitions of the jurisdiction of

4   this court have been that the COURT has jurisdiction of matters

5   involving a question of federal law, or in civil cases they

6   have jurisdiction of diversity cases between citizens of

7   different states involving an amount of over 75,000.

8        So in that sense, the Court is of limited jurisdiction

9   and its cases must arise under the federal laws.  But a tax

10  case, which yours is, arises under the federal tax laws.  So I

11  think under those circumstances the Court would have

12  jurisdiction.

13       MS. RICE:  According to this number three, to me that

14  explains it.

15       May I go on, sir?

16       THE COURT:  Yes, of course.

17       MS. RICE:  Four, this Court lacks subject matter

18  jurisdiction due to the plaintiff's lack of capacity to

19  initiate an action against someone other than a U.S. citizen

20  subject, see paragraph 8, et seq. of my amended motion.

21       Now, this is my argument.  Without opposition by the

22  plaintiff to my position that this court lacks both in personam

23  and in rem jurisdiction, the Court summarily rejected my

24  position without providing findings of fact and conclusions of

25  law supporting its denial.  On none of the issues did the Court

1    cite controlling authority to reject my status and supporting

2    arguments.

3           Rather, the Court merely adopted the Magistrate's

4    report which restated the plaintiff's misuse of U.S. V Cooper,

5    170 Federal 3d 691, a Seventh Circuit case that is neither

6    controlling nor on point to the issues raised in my motion to

7    quash.  This may be because there is no decision in the Tenth

8    Circuit directly on point.

9           On the issues of whether the chief counsel has

10   standing to authorize this case and whether the Court has

11   in rem jurisdiction to foreclose on real or personal property

12   outside a federal enclave, this Court was silent.

13          Because my position involves controlling questions of

14   law as to which there is substantial ground for difference of

15   opinion, should the Court sustain its order denying my motion

16   to quash, an immediate appeal from the order may materially

17   advance the ultimate termination of this litigation.

18          I, therefore, ask the Court, should it again deny my

19   motion to quash, that it make findings of fact and conclusions

20   of law and to certify its order for interlocutory appeal.

21          In conclusion, my motions to quash set forth

22   controlling questions of law as to the jurisdiction to which

23   there is substantial ground for difference of opinion.  Since

24   any one of the arguments that I raised would materially advance

25   the ultimate termination of this case, I contend that

Page 10

1  certification fulfills the second requirement under 28 U.S.C.

2  Section 1292(b).

3       Lastly, I add that an immediate appeal would

4  facilitate the resolution of these issues.  A decision by the

5  Tenth Circuit Court of Appeals would protect other Wyoming

6  citizens from claims outside the jurisdiction of the United

7  States.  A decision by the appellate court on the topics would

8  be beneficial in determining the course of future litigation on

9  these positions.

10       For these reasons, as well as the reasons stated in my

11 motion to quash, I move this Court to reverse itself and grant

12 my motion to quash, or, in the alternative, to make findings of

13 facts and conclusions of law in support of its denial of my

14 motion to quash and to certify the issues for interlocutory

15 appeal.

16       That is all I have.

17       THE COURT:  Anything further?

18       I've got a couple of questions for you, Mrs. Rice.

19       First, you are obviously a resident of Sheridan

20 County; is that correct?

21       MS. RICE:  Yes.

22       THE COURT:  And have been for many, many years?

23       MS. RICE:  Yes.

24       THE COURT:  Very well.  And you are a United States

25 citizen also, are you not?

Page 11

1          MS. RICE:  Yes, under the status that is in my

2    explanation.

3          THE COURT:  And were you served with process, that is,

4    a summons issued by this court after the case was first

5    brought?

6          The Government filed the action on January 19th, 2007

7    to reduce to judgment the federal tax assessments.  Were you

8    served with notice of that filing?

9          MS. RICE:  On February 14th.

10         THE COURT:  On February 14th.  All right.

11         And then am I correct in my understanding that you

12   didn't do anything about it?

13         MS. RICE:  No, we replied to it and you have all of

14   that information.

15         THE COURT:  You didn't --

16         MS. RICE:  We have done everything properly.

17         THE COURT:  You didn't reply to it in any way?

18         MS. RICE:  I have a whole file and I don't have it

19   with me.

20         THE COURT:  Is this not the first time that you have

21   appeared in the United States District Court for the District

22   of Wyoming?

23         MS. RICE:  Yes, sir.  I was called in last June.

24         THE COURT:  All right.  And you heretofore filed a

25   motion to quash service of process as well as a motion to

2e09155e-a1dc-495f-b24d-cc5c24729e2e

Page 12

1   dismiss, and I understand that you did not appear before the

2   Magistrate in any way either.

3          MS. RICE:  I was not called to appear before the

4   Magistrate.

5          THE COURT:  All right.  And consequently, the

6   Magistrate ended up denying your motion to quash and your

7   motion to dismiss and recommended to this Court that it find

8   that you were properly served, that there was venue in this

9   case, and that the actions of the United States were to collect

10  the taxes that you owed, and, therefore, it recommended that I

11  deny your motions, which I have done.

12         Tell me this:  Did you receive notice of that

13  decision?

14         MS. RICE:  The decision that was made in June?

15         THE COURT:  The decision of this Court that the

16  Magistrate -- adopting the Magistrate's recommendations.

17         MS. RICE:  Sir, we have been --

18         THE COURT:  I believe that was filed on June 15th of

19  last year.

20         MS. RICE:  All that has been responded.  There is on

21  file all of the replies, all of the papers.  It is all in the

22  paperwork that has been put in.

23         THE COURT:  All right.  So you did have notice of it?

24         MS. RICE:  There has been a response whenever

25  necessary, sir.

Page 13

1    THE COURT:  Well, Mrs. Rice, was there any reason that

2  you then didn't appear --

3    MS. RICE:  In June, sir?

4    THE COURT:  -- and respond?

5    MS. RICE:  In June?  Are you talking about the June

6  hearing in your court?

7    THE COURT:  Yes.

8    MS. RICE:  I was in Saint Vincent's Hospital in

9  Billings, Montana on that day, and my son reminded me.  He

10  said -- it was the very morning that you were -- I had had an

11  angiogram and gone home to Sheridan, which doesn't have any

12  kind of cardiology treatment, and I had a hematoma and they

13  just didn't do anything to stop it.  And I had to go to

14  Billings, and it was on the very 4th that I was operated on,

15  sir, to save my life.  And I wrote and explained it.  The

16  papers are all here.  There's an explanation here.

17    THE COURT:  Well, I've gone through this file and I

18  haven't seen anything that indicated that you told the Court,

19  namely me, that you were in the hospital and unable to respond

20  and asked for more time.

21    MS. RICE:  We did not do that.  We sent in an

22  explanation.  After I got out of the hospital it was sent in.

23  And I saw that paper last night.  I have it in my briefcase.

24    THE COURT:  Well, Mrs. Rice, the courts of this

25  country, including this court, operate on a system of

1   deadlines.  You either respond by a certain time or you are

2   defaulted.  Were you aware of this?

3          MS. RICE:  Yes, we were.  And I don't know --

4          THE COURT:  Well, then why --

5          MS. RICE:  -- I was incapacitated where I couldn't do

6   anything about it, and I had --

7          THE COURT:  Well, why didn't you do anything about it?

8          MS. RICE:  Sir, I was in the hospital from May 29th

9   on.  And I suppose I could have called the Court from there,

10  but it did not enter my mind.

11         THE COURT:  When did you get out of the hospital.

12         MS. RICE:  Sir?

13         THE COURT:  When did you get out of the hospital?

14         MS. RICE:  It was about -- I can't remember if it was

15  the 8th or the 11th, something like that, of June.

16         THE COURT:  After you got out of the hospital, did you

17  ever --

18         MS. RICE:  That was when --

19         THE COURT:  -- write to me or file a motion of any

20  type asking for more time?

21         MS. RICE:  I -- I don't remember what it said, sir,

22  but there is a paper in there that explains the situation.  And

23  I apologize that I didn't let you know.  I sincerely apologize

24  for not knowing that.

25         THE COURT:  Well, even if you were given more time

1  because of your illness and hospitalization, could you have

2  presented some valid defense to the action to foreclose these

3  tax liens?

4        MS. RICE:  I believe, sir, that you have in your

5  records -- we were -- what we were doing at that time was

6  arguing the same thing we are arguing now -- we, being me and

7  the frog in my pocket -- that it didn't -- it was not under the

8  jurisdiction.  We had -- we had -- as soon as I got that, I was

9  advised and we did everything that we were supposed to do in

10  saying this is why we don't belong in that court and still

11  arguing the same facts I'm arguing today, sir.  And that's

12  really all I have to say about it.

13        THE COURT:  Well, may I ask you this:  Are you a

14  member of any tax protest organizations?

15        MS. RICE:  What does -- no, sir.

16        THE COURT:  Well, now, there are several organizations

17  of that type.  I am not familiar with them all, but over the

18  years I have had representatives of different tax protest

19  organizations appear in this court, such as -- Posse Comitatus

20  is one of them -- and they usually take positions that are

21  similar to the ones you're taking now.

22        MS. RICE:  But, sir, that's irrelevant to what I am

23  arguing.  I have no connection with quasi-organizations.

24        THE COURT:  And no member of any of those

25  organizations is helping you with your responses?

1          MS. RICE:  Sir, no, sir.

2          THE COURT:  Have you consulted a lawyer, by any

3    chance --

4          MS. RICE:  Yes, I have.

5          THE COURT:  -- regarding your responses?

6          MS. RICE:  Yes, I have.  Of course I have.

7          THE COURT:  And is that a person who is admitted to

8    practice before this court?

9          MS. RICE:  Not in the state of Wyoming, sir.  That's

10   why I'm --

11         THE COURT:  I see.  There's no one in Wyoming?

12         MS. RICE:  Not that I know of.

13         THE COURT:  I see.  Well, what I'm getting at here,

14   Mrs. Rice, is this:  If I were to give you additional time, say

15   another ten days, in which to respond, is there any response

16   that you could make which would convince the Court that you had

17   a valid defense?

18         MS. RICE:  I thought, sir, that what I have would

19   speak for itself.  There are a lot of people that don't have

20   any understanding of this, but that's why we have stated the

21   details in this.  And you have to understand with an open mind,

22   sir, that this is how it actually is in the law.  And I -- it

23   just -- the papers speak for themselves, I believe.

24         THE COURT:  Well, may I ask you this:  These are liens

25   against you because you didn't pay your taxes.  Tell me why you

Page 17

1   didn't pay.

2          MS. RICE:  I did in what I read, sir, and I will give

3   you a copy.

4          THE COURT:  Well, just tell me, is there a reason that

5   you didn't?

6          MS. RICE:  Let me go back here.

7          If you read Title 26 of the United States Code, and in

8   my number three that I stated I am not a U.S. citizen subject,

9   which means -- if you know the tax laws what they really say

10  there probably isn't anyone in here who is subject to that.

11  And I think, just for your information -- and I followed your

12  career all your life and my life that you have been in public

13  office and found you to be very honorable.  And I think it

14  would be worth looking into.  It is really eye opening, sir.

15         And I intend to prove that as my destiny that -- and

16  there are a lot of people who are talking about changing the

17  tax laws and this is the reason that is behind a lot of that.

18  Some people have other reasons, maybe.  But anyway, if you

19  would please read this and if you would like to take the

20  time -- I would grant, that's up to you.  But that's all I have

21  to say at this time.

22         THE COURT:  All right.  Thank you, Mrs. Rice.

23         Mr. Pitman, I'll be glad to hear you.

24         MR. PITMAN:  Good morning, Your Honor.  For the

25  record, I'm Michael Pitman from the Tax Division of the

Page 18

1  Department of Justice here representing the plaintiff, the

2  United States, today.

3       I would like to begin by thanking the Court for

4  accommodating the Government and allowing me to appear without

5  an Assistant United States Attorney this morning.

6       As I understand it, there's currently two related

7  issues before the Court.

8       THE COURT:  Mr. Pitman, I'm sorry, you've got to speak

9  directly into that mike.  It isn't the world's best mike, but

10  this morning I forgot to put my hearing aid in, and, as a

11  result, I am without it so you've got to speak a little louder.

12       MR. PITMAN:  Very well, Your Honor.  I'm sorry.

13  Thought I was blasting people out.  Too much volume.

14       It is my understanding that we're here today to

15  evaluate two related issues, the first of which is the

16  defendant's motion that the Court reconsider its order denying

17  her motion to quash service and dismiss the complaint or

18  otherwise certify that decision for an interlocutory appeal.

19       As we have heard and it is my understanding based on

20  the pleadings, the defendant's position is that as a resident

21  of the state of Wyoming she's not subject to federal

22  jurisdiction, that the United States is somehow distinct from

23  the United States of America.

24       These are positions that I imagine the Court has

25  encountered in the past.  They're positions that have been

Page 19

1  evaluated by every circuit in the country and unanimously

2  rejected, including the Tenth Circuit.  And there's case law

3  cited in the Government's opposition to the defendant's motion.

4          Accordingly, it is the Government's position that

5  there's no basis to reconsider the decision to deny the

6  defendant's motion to quash or dismiss, and there is certainly

7  no substantial grounds for difference of opinion -- excuse

8  me -- regarding the law that would justify certification under

9  28 1292(b).

10          The second issue before the Court today is the entry

11  of default against the defendant in this case.  Just as

12  background, Your Honor, this case is now almost a year old and

13  there's no -- no answer has been filed.  The plaintiff did file

14  what -- a motion under Rule 12, a motion to quash or dismiss.

15  And when that motion was denied, obviously under the federal

16  rules the clock starting ticking for her to file her answer.

17          Instead, she filed the motion to reconsider or to

18  certify, and it is my understanding based on her pleadings that

19  she interpreted that pleading as a responsive pleading under

20  the rule or was filed in lieu of an answer, but of course under

21  28 1292(b) the filing of a motion to certify does not stay a

22  district court action absent court order.  And I believe that

23  the defendant was aware of that requirement in that she

24  requested a stay be entered in her motion.

25          Of course the Court did not issue a stay.  That motion

Page 20

1   is still pending.  Nevertheless, the defendant is obligated to

2   continue litigating this action.  By failing to file a

3   responsive pleading for several months now, she has, indeed,

4   defaulted, and accordingly, the entry of default is

5   appropriate.

6           THE COURT:  With regard to the motion to appeal the

7   case -- and of course that's her right to do so.  I have no

8   doubt about that -- do you have any objection to a stay of the

9   proceedings to foreclose the tax liens pending appeal?

10          MR. PITMAN:  The only opposition the Government would

11  raise to a stay is -- are basically timely concerns.  This

12  matter has been proceeding very slowly, has been pending for

13  quite a while.  An appeal is almost certainly -- an appeal of

14  the Court's decision to deny the motion, in my opinion, is

15  entirely frivolous and could actually expose Miss Rice to

16  sanctions by the circuit court for raising these arguments once

17  again after they have been so thoroughly rejected.

18          I don't believe that it would -- I'm sorry, Your

19  Honor.

20          THE COURT:  The Court of Appeals does have expedited

21  methods of reviewing cases, and I think a committee of that

22  court reviews cases such as this and place -- and can place

23  them on an expedited hearing basis.  I'm not sure how long such

24  an expedited track would take, but I would guess it could be

25  six to eight months.

1      And would you feel that the United States would incur

2  any harm to its position by a stay for something like that

3  period of time?

4      MR. PITMAN:  Well, the primary harm would be a

5  possible dissipation of the funds and/or property at issue as

6  well as possible destruction of evidence or loss of memories of

7  witnesses; basically complication of future discovery.

8      THE COURT:  All right.  Well, go ahead, Mr. Pitman.

9      MR. PITMAN:  I believe -- in essence, Your Honor, I

10  don't think that the requirements of 28 U.S.C. 1292 have been

11  satisfied in this case in that there's no grounds whatsoever

12  for a dispute regarding the governing law.  And accordingly,

13  the Government would oppose the defendant's motion to certify

14  and for reconsideration.

15      THE COURT:  Anything further?

16      MR. PITMAN:  No, Your Honor.

17      THE COURT:  All right, thank you.

18      MR. PITMAN:  Thank you.

19      THE COURT:  Mrs. Rice, you're entitled to a rebuttal

20  argument to rebut the arguments that Mr. Pitman just made.

21      MS. RICE:  I just happen to have one.  I just happen

22  to have one, sir, Your Honor.

23      The plaintiff's position seems to be that because I

24  did not file an answer subsequent to this Court's denial of my

25  motion to quash, but, instead, filed a motion to reconsider,

2e09155e-a1dc-495f-b24d-cc5c24729e2e

1    or, in the alternative, a motion for findings of fact and

2    conclusions of law and to certify the order for appeal, that

3    the plaintiff is entitled to an entry of default and a default

4    judgment.

5         Can you hear me all right, sir?  This is a little

6    higher than it was.

7         THE COURT:  Yes, that's fine.

8         MS. RICE:  The fact is that I have not failed to file

9    an answer nor am I in default because I have been waiting for

10   the Court to enter a ruling on my motion to reconsider.  The

11   proverbial ball has been in your court, Your Honor.

12        THE COURT:  Well, I believe that the Court has entered

13   an order on your motion.  How can you say that it hasn't?  Did

14   you not receive the order of this Court -- let's see.  Of

15   course, the clerk's order that you were in default on

16   August 13th, you know, when the clerk acts for this Court,

17   that's the Court acting.

18        MS. RICE:  We responded to that too, sir.  But there

19   was one I received in July, I believe.

20        THE COURT:  All right.  Well, go ahead, Mrs. Rice.

21        MS. RICE:  Okay.  It, therefore, remains my position

22   that the plaintiff is not entitled to the entry of default by

23   the clerk of the court and that that entry should be vacated.

24   The plaintiff is using a tortured construction of 28 U.S.C.

25   1292(b) as a basis for their reasoning that I was required to

Page 23

1     file an answer notwithstanding my motion to reconsider.

2           However, 1292(b) merely provides that a stay may be

3     granted upon application for an interlocutory appeal.  Because

4     I have made no application for an interlocutory appeal, but

5     have, rather, instead merely asked this Court to certify the

6     issues for appeal so that I may apply for an appeal, the

7     plaintiff's use of the statute is -- authority obligating me to

8     file an answer while awaiting this Court's ruling on my motion

9     to reconsider is, at best, specious.  The entry of default by

10     the clerk should, therefore, be vacated.

11           And that's all I have to say, sir.

12           THE COURT:  Well, now, are you aware of the order by

13     this Court of June 15th?  And this was an order which adopted

14     the Magistrate's recommendation and denied all of your

15     outstanding motions, which, of course, would include motions to

16     reconsider and anything else.  And they were all denied last

17     June 15th.

18           MS. RICE:  Yes, sir, I received that.

19           THE COURT:  Well, why, then, do you say that we

20     haven't ruled on those?

21           MS. RICE:  I would have to talk to my legal advisors

22     and find out what the reasoning is and try to make that clear

23     for you, sir, if you would allow us to do that.

24           THE COURT:  Well, this has gone on quite a long time

25     and I don't -- I think we've got to decide it right now.  So

Page 24

1   unless you have more to tell me about it, I --

2          MS. RICE:  Would you allow me to take a break and make

3   contact for 15 minutes and see if there's anything I can help

4   you with?

5          THE COURT:  All right.  I will give you a 15-minute

6   recess.  It is now 11:27, so I will give you a recess until

7   11:45.

8          MS. RICE:  Thank you, sir.

9          THE COURT:  All right.  We will stand in recess.

10      (Recess taken 11:27 a.m. until 11:45 a.m.)

11         THE COURT:  Mrs. Rice, the recess has expired.  Have

12  you had the opportunity to get the advice and counsel that you

13  were seeking?

14         Come forward.

15         MS. RICE:  Yes, sir.  I have nothing further to say.

16         THE COURT:  All right.  I will be glad to hear

17  whatever you wish to tell me.

18         MS. RICE:  No, I say I have nothing further to say,

19  sir.

20         THE COURT:  Well, Mrs. Rice, the Court is aware of the

21  fact that you have your home at stake, and I think you also

22  have an undivided interest in 118 acres of ranchland that

23  your -- I think it is owned by your family.

24         Do you realize that these actions that you're taking

25  are endangering these interests?

2e09155e-a1dc-495f-b24d-cc5c24729e2e

Page 25

1        All right.  If you have nothing to say, the Court

2   finds that the arguments of the defendant, Jane Joyce Rice, are

3   without any merit whatsoever, in fact or in law, and the Court

4   finds that Mrs. Rice has not presented the Court with any

5   suitable legal reason for not having appeared, that she has had

6   time since the entry of the order of June 15th to seek

7   reconsideration on the ground that she was in the hospital at

8   the time that she defaulted before the Court.

9        And that would have been a good ground for an

10  extension of time, but, Mrs. Rice, you haven't asked for it.

11       And now on December 4th, 2007, the clerk signed an

12  entry of default and I think that that default was well taken.

13  So at this time the motions to quash and the motions to dismiss

14  and the motions for rehearing thereon are all denied.

15       And, Mr. Pitman, I understand that what you seek now

16  is a judgment of foreclosure?

17       MR. PITMAN:  If I may, Your Honor, the Government

18  is -- the Government would have been -- would be willing to

19  allow the case to proceed despite the proper default were

20  Miss Rice able to present any substantive defense.

21       However, I think today she told us that she has none,

22  and so I think that a judgment of default is appropriate as

23  long as the Court has determined, properly in my opinion, that

24  her legal arguments against the assessments at issue are

25  specious.

1        THE COURT:  Well, the judgment of default entered by

2    the clerk is obviously well taken.  And now the question is

3    what's next?  And I think the next thing would be a judgment of

4    foreclosure.

5        MR. PITMAN:  I would be glad to prepare a proposed

6    judgment for Your Honor.

7        THE COURT:  Well, I want you to prepare the necessary

8    order of foreclosure and submit a copy to Mrs. Rice.

9        And, Mrs. Rice, you may have ten days from the date of

10   receipt of that to make any motions or arguments you wish

11   before the Court.  I will be glad to hear you.  But if you

12   don't make any within a ten-day period, I will assume that you

13   have, as you just now said, nothing more to say, and the

14   judgment of foreclosure may be entered.

15       Now, the judgment shall then be stayed pending appeal.

16   And your process of appealing is this:  Within ten days of the

17   entry of that order, you must file a notice of appeal.  And

18   then you have a duty of assembling the record on appeal and

19   getting a transcript of any of the proceedings of this court

20   that you feel should be brought to the attention of the Court

21   of Appeals of the Tenth Circuit.

22       And then, of course, there are times that that Court

23   may set for the filing of the record on appeal and the briefs.

24   And those times must be scrupulously observed.  You cannot

25   expect that Court to be as liberal and forgiving as this Court

Page 27

1    has been.  And it operates on a difficult time schedule, and it

2    just doesn't brook delay of any type.  So you've got to be

3    very, very careful not to commit any defaults there.

4              Is there anything else, Mr. Pitman?

5              MR. PITMAN:  No, Your Honor.  Thank you, very much.

6              THE COURT:  All right.  Well, prepare what the

7    Government wants on this case and show that Mrs. Rice's

8    arguments have been considered and found to be without legal

9    merit and denied.

10             MR. PITMAN:  I will do that, Your Honor.

11             THE COURT:  All right.  Fine.

12             And the court will stand in recess subject to call --

13   or until 1:30.

14        (Hearing proceedings concluded

15        11:55 a.m., January 4, 2008.)

16

17

18

19

20

21

22

23

24

25